OPINION
This is a consolidated appeal by the appellant, Jennifer Kessler, from the decision of the Union County Court of Common Pleas, Juvenile Division, which granted permanent custody of her two children, Ilea and Kelsey Kessler, to the Union County Department of Human Services ("UCDHS").
At the time of the permanent custody hearing on May 7, 1998, Ilea was two and one-half years old and Kelsey was one and one-half years old. The juvenile court overruled appellant's motion to be conveyed to that hearing from the Ohio State Reformatory for Women where she was serving a sentence of eleven months.[1] The trial court did, however, permit that her deposition be taken for admission at the hearing. The children's father did not appear at the hearing and is not a party to this appeal.
After hearing the testimony of the witnesses, the juvenile court entered judgment granting permanent custody of both children to UCDHS. Appellant now appeals, asserting three assignments of error. For her first assignment of error, she asserts that:
 The court erred in refusing to issue a warrant to convey Jennifer Kessler from the Franklin County Pre-Release Center for attendance at the permanent custody hearing, in violation of Jennifer Kessler's constitutional rights.
Appellant argues that she was denied due process in this matter because the juvenile court refused to grant her motion to convey so she could attend the permanent custody hearing.
Other appellate courts have applied the balancing test established in Mathews v. Eldridge (1976), 424 U.S. 319, 335, to determine whether a parent has a due process right to be present at the permanent custody hearing. In re Sprague (1996),113 Ohio App.3d 268; In re Fitzgerald (Jan. 28, 1998), Summit App. No. 18508, unreported; In re Yearian (Sept. 27, 1996), Portage App. No. 95-P-0102, unreported; In re Davis (Mar. 30, 1995), Franklin App. No. 94APF08-1205, unreported; In re Vandale (June 30, 1993), Washington App. No. 92 CA 31, unreported. The three factors to be considered and balanced by a juvenile court are: (1) the private interest affected by the government action; (2) the risk of erroneous deprivation of such interest and the value of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens. Id. In balancing those factors, it has been determined that an incarcerated parent's right to due process is not violated when she is represented by counsel at the hearing, a full record of the proceedings is made, and any testimony that she may wish to present could be presented by way of deposition. See id.
In considering these factors, we note that appellant asserts a fundamental right to care for, have custody of, and manage her children. In re Murray (1990), 52 Ohio St.3d 155, 157, citing Santosky v. Kramer (1982), 455 U.S. 745, 753. However, in balancing all of the factors involved, we note that a full record was made of the proceedings, appellant was represented by counsel at the hearing, and her testimony was presented by way of deposition. Additionally, appellant's counsel cross-examined UCDHS' witnesses and also presented four witnesses on appellant's behalf, as well as the deposition testimony of another witness. Appellant's mother, the children's grandmother, testified and advocated appellant's desire to retain custody of her children.
Consequently, under the circumstances of this case, we cannot find that appellant's right to due process was violated by the juvenile court's denial of her motion to be transported to attend the permanent custody hearing. Appellant's first assignment of error is overruled.
For her second assignment of error, appellant asserts as follows:
 The court erred in ruling that the Department of Human Services presented by clear and convincing evidence that one of the twelve statutory predicate factors was presented that demonstrates that the children should not or could not be placed with appellant-mother within a reasonable time.
 (A). The court erred to the prejudice of appellant in finding that the Union County Department of Human Services made reasonable efforts to implement the reunification plan.
Appellant argues that the evidence was insufficient to satisfy the clear and convincing standard with regard to even one of the statutory requirements of R.C. 2151.414(E). Pursuant to section (E) of this statute, the juvenile court is required to find that the children cannot be placed with either parent if the court has determined by clear and convincing evidence that one or more of the twelve factors set forth exist. Those four factors of R.C. 2151.414(E)[2] which the juvenile court found applicable to this case were:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties[;]
* * *
 (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
* * *
 (8) The parent is repeatedly incarcerated, and the repeated incarceration prevents the parent from providing care for the child;
 (9) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect[.]
UCDHS first became involved with this family in January 1997 and attempted to provide services to help them. A month later, the children were placed in foster care because they were not being properly cared for by the parents. The testimony of the doctor reveals that appellant failed to bring the children to two medical appointments. In March 1997, appellant's children were returned under protective supervision by UCDHS. According to the doctor, as well as the early intervention specialist involved, appellant failed to follow through with recommended early intervention services for the children at the Harold Lewis School. Thereafter, in June 1997, temporary custody was awarded to UCDHS after the family was evicted from an apartment on Meadows Drive. Since UCDHS' involvement with this family, four case plans and/or amendments were implemented to reunite appellant with the children. The case plan amended on June 13, 1997 required appellant to attend counseling, including budget counseling, maintain stable housing and employment, and complete parenting education.
A review of the record indicates that UCDHS' efforts to reunite the children with appellant were unsuccessful because appellant failed to meet her case plan requirements. According to testimony of the UCDHS caseworker, the caseworker spoke to appellant concerning referrals for those services required by the case plan and would also, on occasion, provide information to her by way of letter. Appellant did not attend counseling. Nor has appellant completed the parenting education. There was also evidence before the court that appellant had not obtained stable employment and housing. According to her deposition testimony, appellant does not deny these facts, although she testified that UCDHS never assisted her in finding a place to live. Appellant further admitted, however, that UCDHS was willing to provide financial assistance in order for her to obtain an apartment.
There was further testimony from the UCDHS caseworker that appellant made a total of six out of thirty-five scheduled visits with the children despite the fact that UCDHS would have provided transportation to her. Between July 3 and August 11, 1997, she attended no scheduled visits with her children.
On September 17, 1997, appellant was incarcerated in the Ohio State Reformatory for Women on a forgery charge. After appellant was granted judicial release on October 27, 1997, UCDHS filed an amended case plan which extended the date for completion of the reunification plan for an additional three months. In January of 1998, appellant was jailed for judicial release violations. She was still incarcerated at the time of the permanent custody hearing. During the three-month period appellant was released, she showed no progress on meeting the case plan requirements. There was evidence appellant had only one visit with the children during that time period. Appellant's probation officer and UCDHS' caseworker testified that appellant failed to report her current addresses to them. Her employment again became sporadic.
Based on the record before us, we find there was clear and convincing evidence to support the juvenile court's findings going to four of the statutory factors under R.C. 2151.414(E). Accordingly, appellant's second assignment of error is overruled.
For her third assignment of error, appellant asserts as follows:
 The trial court erred when it relied upon hearsay and improper evidence in its adjudicatory hearing. The court erred when it allowed testimony regarding mother-appellant's oldest child who was awarded to the Delaware County Human Services Dept. on an order of permanent custody.
Appellant asserts that the trial juvenile court erred in permitting a caseworker from Delaware County Department of Human Services ("DCDHS") to testify about a previous permanent custody case involving the other child she had at the time.
Appellant's two children, Ilea, born August 10, 1995, and Kelsey, born September 22, 1996, are parties to this action. At the permanent custody hearing, the DCDHS caseworker testified that his agency had a history with appellant's family dating back to March 1994. The caseworker then testified concerning appellant's noncompliance with the case plan requirements implemented for her and the other child, Jacob. The agency was granted permanent custody of Jacob in May 1996. Thereafter, the agency received the neglect report regarding Kelsey which led to this case. However, the report was referred to UCDHS due to the family's move to Union County.
In determining whether it is in the best interest of a child to grant permanent custody, R.C. 2151.414(D) provides that the juvenile court must consider all relevant factors, including the custodial history of the child. R.C. 2151.414(D)(3).[3] When determining whether a child cannot, or should not, be placed with either parent within a reasonable period of time, R.C. 2151.414(E) requires the court to consider all relevant evidence. In certain situations, testimony of a parent's past parenting history and her compliance with prior case plans regarding other children could be relevant. For example, in In re Brown (1989), 60 Ohio App.3d 136, the First District Court of Appeals upheld the admission of testimony from a Department social worker about the mother's past parenting history and her ability to comply with prior reunification plans regarding her other children previously placed with relatives. But we note that case involved slightly different issues involving a disposition of permanent custody pursuant to R.C. 2151.353 on a dependency complaint. Additionally, although somewhat different than Brown, in In re Bishop (1987), 36 Ohio App.3d 123, paragraph four of the syllabus, the Fifth District Court of Appeals held that "[t]he unfitness of a parent * * * can be predicted by past history."
However, we believe that great care and caution must be exercised by the juvenile court in considering the admissibility of such evidence. Of course, it is well established that the trial court has discretion in determining the admission of the contested testimony. See State v. Sage (1987), 31 Ohio St.3d 173,180. In addition, the juvenile court acted as the factfinder and it is presumed that the court considered only relevant, admissible evidence in terminating appellant's parental rights. State v. Eley (1996), 77 Ohio St.3d 174, 187. To that end, the trial court in this case carefully stated its intention at the hearing to limit the use of the contested testimony to this limited purpose:
 [T]he court is allowing this testimony just on the limited basis that, to show that these parents had contact with another agency earlier, and some of the impressions of the caseworker with regard to that contact. I am not admitting this evidence for the purpose of showing whether or not they in fact completed the case plans in this case. That's an entirely different matter. So this evidence is limited to just showing a pattern prior to that there was some contact with [DCDHS], and this is what this caseworker is telling us the results were from his standpoint, but I'm not admitting this for the purpose of whether or not they completed the case plan that's before the court.
Moreover, we take this opportunity to note that appellee's rationale for introducing such testimony was clearly erroneous. At trial, appellee argued that the admission of the testimony was proper under Evid.R. 406, which allows evidence of a person's habit to prove that the conduct of the person on a particular occasion was in conformity with the habit. Appellant's counsel objected to the evidence pursuant to Evid.R. 404(B), which prohibits using evidence of other acts to show a person acted in conformity with those acts in the instant case.
However, even assuming, arguendo, that this testimony should not have been admitted, we cannot conclude that its admission was prejudicial based upon a review of the other evidence in the record. In its decision granting UCDHS permanent custody of the two children, the juvenile court expressly found that appellant "has failed to complete the requirements of the case plan and the three amendments." The court then went on to specify at length about appellant's failure to comply with the requirements of R.C.2151.414(E) and the evidence going to the best interest of the children pursuant to R.C. 2151.414(D). As previously discussed, there was ample evidence for the juvenile court to find at least four of the statutory factors of subsection (E) to be present. When considered together with the evidence about the best interest of the children, we cannot conclude that the juvenile court erred in granting permanent custody of the children to UCDHS. Having reviewed the record of the proceedings, we find that none of the issues raised in appellant's third assignment of error are well taken and this assignment of error is overruled.
Accordingly, the judgments of the juvenile court granting permanent custody of the children to the UCDHS are affirmed.
Judgments affirmed.
HADLEY and WALTERS, JJ., concur.
[1] Subsequently, on March 10, 1998, appellant was transferred to the Franklin County Pre-Release Center in Columbus, Ohio.
[2] R.C. 2151.414 was amended, effective March 18, 1999. The amendment, inter alia, re-numbered former divisions (8) and (9) (at issue here) to (13) and (14), respectively. The former numbering will be utilized in this opinion in order to be consistent with the juvenile court's determinations.
[3] The March 18, 1999 amendment changed division (D)(3) relating to the custodial history of the child. This division now provides:
The custodial history of the child, including whether the child has been in the temporary custody of a public children services agency or private child placing agency under one or more separate orders of disposition issued under section 2151.353
[2151.35.3] or 2151.415 [2151.41.5] of the Revised Code for twelve or more months of a consecutive twenty-two month period ending on or after the effective date of this amendment[.]